UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRIAN K. RICE | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Case No.: 2:23-cv-1382-RDP |
| | } |
| KAY IVEY, et al., | } |
| | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on the following motions: a Motion to Quash Alleged Service filed by the former Birmingham City Council members (Doc. # 56); a Motion to Dismiss filed by thirty-four of the Defendants (Doc. # 57); a Motion to Dismiss filed by the City of Birmingham, Mayor Randall L. Woodfin, Joshua D. Carpenter, the Birmingham City Council, and the former and current Birmingham City Council members (Doc. # 58); a Motion to Dismiss filed by six of the Defendants (Doc. # 59); a Motion to Dismiss filed by Corporate Realty Development, LLC and Robert A. Simon (Doc. # 60); and a Motion to Dismiss filed by the UAB Defendants (Doc. # 61). For the reasons discussed below, the motions are due to be granted in part and are moot in part.

**I.   BACKGROUND**

Plaintiff Brian K. Rice filed this case on October 13, 2023. (Doc. # 1). On January 26, 2024, Plaintiff filed his Second Amended Complaint, which is the operative pleading in this case. (Doc. # 51). In the Second Amended Complaint, Plaintiff asserts a total of thirteen claims against forty Defendants.[1] (*Id.*). Plaintiff's Second Amended Complaint includes the following claims:

---

[1] Plaintiff asserts claims against several Defendants in their individual capacity as well as their official capacity. He also sues one individual Defendant, Joshua D. Carpenter, in his official capacity for three different positions he held over the relevant six-year timeframe. Excluding the distinction between individual and official capacity as well as different titles held by Carpenter, Plaintiff brings claims against forty Defendants.

Section 1983 claims (Counts 1-5); Section 1983 claims alleging violations of the Fourteenth Amendment (Counts 6-10); a civil claim for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (Count 11); a fraudulent concealment claim (Count 12); and a violation of 18 U.S.C. § 666 (Count 13). (Doc. # 51 at 33, 41, 43, 46, 50-52, 57, 59-60). In response to the motions, Plaintiff has agreed to dismiss ten of these claims without prejudice: Counts 2 through 5, 7 through 10, 12 and 13. (Docs. # 62-65). Plaintiff has also voluntarily dismissed twenty-three Defendants without prejudice. Those Defendants are Governor Kay Ivey, the Alabama Department of Economic and Community Affairs ("ADECA"), Kenneth Boswell, Michael Wade Presley, the Board of Trustees of the University of Alabama ("UAB"),[2] Ray L. Watts, the Alabama Ethics Commission ("the Ethics Commission"), the City of Birmingham City Council, the former Birmingham City Council members (LaShunda Scales, William Parker, Sheila Tyson, James Roberson, Steven Hoyt, and John Hillard), and the current Birmingham City Council members (Clinton Woods, Hunter Williams, Valerie Abbott, Jonathan T. Moore, Darrell O'Quinn, Crystal Smitherman, Wardine Alexander, Carol E. Clarke, and LaTonya Tate).

There remain three pending claims against seventeen remaining Defendants: Count 1 – a Section 1983 claim against Mayor Randall L. Woodfin (in his individual and official capacities), the City of Birmingham ("Birmingham"), and Joshua D. Carpenter (in his individual and official capacities working for Birmingham); Count 6 – a Section 1983 claim alleging a Fourteenth Amendment violation against Mayor Woodfin (in his individual and official capacities), Birmingham, and Carpenter (in his individual and official capacities working for Birmingham);

---

[2] The Board of Trustees for the University of Alabama (the "Board") was incorrectly named as "University of Alabama at Birmingham." However, the Board governs the entire University of Alabama system. For ease of reference, because the allegations involve the University of Alabama at Birmingham ("UAB"), the court will refer to the Board as UAB.

and Count 11 – a civil RICO claim against Brian H. Paterson, Jr. (in his individual capacity), Mayor Woodfin (in his individual and official capacities), Southern Research Institute, Inc. ("SRI"), Carpenter (in his individual and official capacities as the CEO of SRI and working for Birmingham), Pine Street Strategies, LLC ("Pine Street"), Donald Calloway, Jr. (in his individual and official capacities as CEO of Pine Street), Corporate Realty Development, LLC ("Corporate Realty"), Robert A. Simon (in his official capacity as President and CEO of Corporate Realty), ServisFirst Bank ("ServisFirst"), Thomas A. Broughton, III (in his official capacity as President and CEO of ServisFirst), REV Birmingham, Inc. ("REV"), David B. Fleming (in his individual and official capacities as President and CEO of REV), Birmingham Business Alliance ("BBA"), Brian Hilson (in his official capacity as the former CEO of BBA), Forbes-Tate Partners, LLC ("Forbes-Tate"), and Wesley Ryan Welch (in his official capacity as a Partner at Forbes-Tate).

### A.  Relevant Facts

Plaintiff's case relates to the Federal Opportunity Zones ("FOZs") that were created following the passage of the Tax Cuts and Jobs Act of 2017 ("TCJA"). After the TCJA was passed, governors across the country were tasked with nominating FOZs to be certified by the U.S. Secretary of Treasury (via delegation of his authority to the IRS). (Doc. # 57 at 4-5). FOZs are used as "an economic development tool that allows people to invest in distressed areas. This incentive's purpose is to spur economic development and job creation in distressed communities by providing tax benefits to investors." *Opportunity Zones*, INTERNAL REVENUE SERVICE (last visited July 30, 2024, 9:00 AM), https://www.irs.gov/credits-deductions/businesses/opportunity-zones; (Doc. # 51 ¶ 7).

According to Plaintiff, Downtown Ensley – where Plaintiff now owns several pieces of property – was not chosen as a FOZ due to allegedly fraudulent statements in a letter from Mayor Woodfin on behalf of the City of Birmingham to Governor Ivey dated March 6, 2018 (the "March

2018 Report"). (*Id.* at ¶¶ 6, 72-73). On March 20, 2018, Governor Ivey submitted FOZ nominations to the federal government that were based, in part, on the March 2018 Report. (*Id.* at ¶¶ 200, 228). The FOZ nominations were approved by former President Donald Trump on April 19, 2018. (*Id.* at ¶ 131). Plaintiff did not purchase his Ensley properties[3] until more than three months later, on July 31, 2018. (*Id.* at ¶ 1). The FOZ designations are in effect until 2028. (*Id.* at ¶ 131).

Because he claims the March 2018 Report was fraudulent, Plaintiff argues that those who sent letters of support to Governor Ivey are liable as "co-conspirators" for damage stemming from the March 2018 Report. (*Id.* at ¶¶ 84-107). In addition to those who submitted letters of support, Plaintiff contends that the beneficiaries of the March 2018 Report are also responsible for the alleged injury, including UAB, SRI, Carpenter, Corporate Realty, ServisFirst, BBA, REV, and the President and/or CEO of those organizations. (*Id.*).

In October 2019, over a year after his purchase of the Ensley properties, Plaintiff met with Carpenter, Mayor Woodfin, and Birmingham Council member Hilliard to discuss his concerns regarding Ensley and the FOZs. (*Id.* at ¶¶ 27-28). Based on the discussions during the meeting in 2019, on August 13, 2021, Plaintiff filed a formal complaint with the U.S. Department of Treasury Inspector General. (*Id.* at ¶ 29).

On February 22, 2022, Plaintiff filed a formal complaint with the Ethics Commission regarding the alleged fraud contained in the March 2018 Report. (*Id.* at ¶ 31). In the Ethics Commission complaint, Plaintiff accused Mayor Woodfin and Carpenter of violating several provisions of the Alabama Ethics Law in relation to alleged misappropriation of Birmingham funds. (*Id.* at ¶¶ 32-55). In addition to Mayor Woodfin and Carpenter, Plaintiff claims that a BBA foundation, UAB, and SRI all benefitted from the alleged misappropriation of Birmingham funds

---

[3] Plaintiff purchased the allegedly damaged properties located at 600, 604, 606, 608, 610, 615, 617, and 619 19th Street Ensley Birmingham, AL. (Doc. # 51 ¶ 1).

in connection with the FOZs. (*Id.* at ¶¶ 33-43, 76, 82-83). In the Ethics Commission complaint, Plaintiff also accused Paterson (Assistant General Counsel for Ethics Commission) of allowing Carpenter to operate without following proper procedures as established by Birmingham ordinances. (*Id.* at ¶ 43). Plaintiff contends that Carpenter was able to leverage Birmingham funds in such a way to benefit himself because the properties Plaintiff later purchased were excluded from the FOZ designation. (*Id.* at ¶ 46). Plaintiff further claims that Paterson permitted federal and ethics violations by Mayor Woodfin and Carpenter because he failed to act on Plaintiff's Ethics Commission Complaint. *Id.* at ¶ 48-53).

As a result of the alleged fraudulent March 2018 Report, Plaintiff claims he suffered various forms of economic loss. (*Id.* at ¶¶ 107-125). Plaintiff also argues that these actions have decreased his property value. (*Id.* at ¶¶ 54-55).

## II.     LEGAL STANDARD

Because Defendants contend that Plaintiff's Second Amended Complaint fails to comply with several of the Federal Rules of Civil Procedure, the court reviews the standards of review regarding those rules.

### A.     Rules 8(a)(2) and 10(b)

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. Further, Rule 10 provides that:

> A party must state its claims or defenses in numbered paragraphs, each limited as
> far as practicable to a single set of circumstances. A later pleading may refer by

> number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence -- and each defense other than a denial -- must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). A plaintiff must satisfy Rules 8 and 10 to comply with the federal pleading standards. *See Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015).

### B.     Rule 12(b)(1)

"A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Se. Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla. 1993) (citing *Stanley v. Cent. Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991) and *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 671-72 (5th Cir. 1978)). Thus, under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss, arguing that the court lacks subject matter jurisdiction. Such a motion should be granted "'only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief.'" *Harris v. Bd. of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1232 (N.D. Ala. 2021) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A party may raise a facial or factual challenge to the complaint under Rule 12(b)(1). *McElmurray v. Consol. Govt. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (other citations omitted). On the other hand, "factual attacks" challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

When a party raises a factual attack on subject matter jurisdiction, "[the] court's power to make findings of facts and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of [the] plaintiff's cause of action." *Id.* When a Rule 12(b)(1) motion attacks the merits, a court should review that motion under the standards for a Rule 12(b)(6) motion to dismiss for failure to state a claim, or, if considering matters outside the pleadings, under the standards for a Rule 56 motion for summary judgment. *See Garcia*, 104 F.3d at 1261 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981)); *see also Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2007) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). The burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction. *Harris*, 846 F. Supp. 2d at 1223.

**C.     Rule 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are

merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## III.  DISCUSSION

There are currently six pending Motions to Dismiss before the court. However, based on Plaintiff's voluntary dismissal, there are only three claims remaining against seventeen Defendants. After careful review, the court concludes that, for the reasons discussed below, the remaining claims -- Counts 1, 6, and 11 -- are due to be dismissed with prejudice.

### A.     Plaintiff's Second Amended Complaint is an impermissible shotgun pleading.

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft*, 620 F. App'x at 704; *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). While there is no precise formula as to what constitutes a "shotgun" pleading, a complaint falls within this category if it: (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and immaterial facts" unconnected to a particular cause of action; (c) fails to divide different claims into separate counts; or (d) alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322-23.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against

them and the grounds upon which each claim rests." *Id.* at 1323. The key question in deciding if a pleading is deemed "shotgun" is not whether a complaint fits into an identified category, but whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

Even in the absence of a motion, a court faced with a shotgun pleading has the inherent authority to *sua sponte* demand repleader of such a complaint pursuant to Rule 12(e). *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006). Indeed, the Eleventh Circuit strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case – even if the other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).

Here, the Second Amended Complaint fails to provide each Defendant with "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. The 65-page Second Amended Complaint consists of 305 paragraphs, most of which are either duplicative or repetitive. Plaintiff includes pages of conclusory allegations that are not connected to any particular cause of action. As such, Plaintiff fails to provide Defendants with adequate notice of the claims against them.

The Eleventh Circuit makes clear that a *pro se* plaintiff should be allowed an opportunity to amend the pleading. *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2018). However, where "the complaint as amended would still be properly dismissed," leave to amend is futile and not required. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). As discussed below, Counts 1 and 6 are barred by the applicable statute of limitations. In addition, Plaintiff's RICO claim fails to state a claim. Any additional amendments to the complaint would still fail to state a claim, and thus would be futile. Therefore, the Second Amended Complaint is due to be dismissed with prejudice as a shotgun pleading.

### B. Counts 1 and 6 are barred by the statute of limitations.

Plaintiff asserts claims under section 1983 in Counts 1 and 6. "The statute of limitations for [section] 1983 claims is governed by the forum state's residual personal injury statute of limitations." *Hines v. Thomas*, 604 F. App'x 796, 800 (11th Cir. 2015) (citing *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989)). In Alabama, that period is two years. Ala. Code. § 6-2-38(l). The statute of limitations begins to run on a section 1983 claim when the facts supporting such a claim "are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)).

Plaintiff filed this action on October 13, 2023. (Doc. # 1). However, Defendants argue that, based on his own pleadings, Plaintiff was subjectively aware of the alleged fraud on which the section 1983 claims are based no later than August 2021. The court agrees. In the Second Amended Complaint, Plaintiff alleges the following:

> 29. In preparation for Plaintiff['s] 8/13/21 formal complaint with the U.S. Department of the Treasury Inspector General, Plaintiff finally was aware of the fraud to exclude Ensley. …
>
> 31. Plaintiff found no help with the federal agency responsible for overseeing federal opportunity zones, so Plaintiff filed a 246 page formal complaint with the [Ethics Commission] on 2/22/22 and continued correspondence through 7/1/22 full of official records of published content and how the content was inconsistent with the 3/6/18 [Birmingham] Federal Opportunity Zone (FOZ) false report. …
>
> 47. Plaintiff also shared Plaintiff['s] 8/13/21 formal complaint filed with the Department of Justice Inspector General for the Department of the Treasury which reconfirmed the omitted brownfield sites and city assets…

(Doc. # 51). Plaintiff's allegations make clear that he became aware of the alleged basis for his section 1983 claims, at the latest, in August 2021, when he submitted a formal complaint to the U.S. Department of Treasury. (Doc. # 51); (*See* Doc. # 14) ("Plaintiff ha[s] filed formal complaints all the way through the federal level of government seeking for redress to grievances."). Because

10

Plaintiff was aware of the alleged violations of his rights by August 13, 2021, the statute of limitations for Plaintiff's section 1983 claims would have run by August 13, 2023 – two months before Plaintiff filed his original complaint. Thus, Plaintiff's claims are untimely.

To the extent Plaintiff contends that he was ignorant of the accrual of his claims (and, to be clear, that is a contention that is frivolous based on his U.S. Treasury report and his complaint), that assertion does not save his claims in this case. *See Rice v. Sixteen Unknown Fed. Agents*, 658 F. App'x 959, 962 (11th Cir. 2016) ("Neither Rice's ignorance of the law nor his [*pro se*] status constitute 'extraordinary circumstances' sufficient to toll the running of the statute of limitations."); *Quina v. Owens-Corning Fiberglas Corp.*, 575 F.2d 1115, 1118 (5th Cir. 1978)[4] ("[I]gnorance of … legal rights, or failure to seek legal advice [does] not toll the statute of limitations."). Therefore, because Plaintiff's section 1983 claims were not filed before the statute of limitations expired, Counts 1 and 6 are due to be dismissed with prejudice.

      **C.**      **Plaintiff's RICO claim in Count 11 fails to state a claim.**

RICO "imposes criminal and civil liability upon persons who engage in certain 'prohibited activities,' each of which is defined to include, as a necessary element, proof of a 'pattern of racketeering activity.'" *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) (quoting 18 U.S.C. § 1962). The Eleventh Circuit has explained that "[t]o state a claim under RICO a plaintiff must allege each of the following four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Durham v. Business Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (internal marks omitted). As the Eleventh Circuit has elaborated:

> In civil cases, however, RICO plaintiffs must also satisfy the requirements of 18 U.S.C. § 1964(c). Section 1964(c) states that "[a]ny person injured in his business or property by reason of" RICO's substantive provisions has the right to "recover threefold the damages he sustains..." 18 U.S.C. § 1964(c). Thus, under § 1964(c), civil RICO claimants, such as the plaintiffs here, must show (1) the requisite injury

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.

*Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006), *abrogated on other grounds as recognized in Simpson v. Sanderson Farms, Inc*, 744 F.3d 702, 714-15 (11th Cir. 2014).

The court concludes that Plaintiff has not alleged the elements required under Section 1964(c). Further, even if he had, Plaintiff's RICO claim is nonetheless untimely. Plaintiff's RICO claim is due to be dismissed with prejudice on this basis. The court need not address Defendants' alternative arguments.

### a.   RICO Standing

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter" may recover under a civil RICO claim. 18 U.S.C. § 1964(c); *see also Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991). Before addressing whether Plaintiff has sufficiently alleged a violation under section 1962, the court must determine whether Plaintiff has plausibly alleged an actionable injury.

Plaintiff claims he suffered loss of investors, emotional distress, and other intangible injuries. However, the statute makes clear that a plaintiff may only recover for injury to his *business or property*. 18 U.S.C. § 1964(c). "The words 'business or property' are, in part, words of limitation." *Grogan v. Platt*, 835 F.2d 844, 846 (11th Cir. 1988). Moreover, Plaintiff must allege injuries that are concrete, *Adell v. Macon Cnty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1237 (M.D. Ala. 2011), and tangible, *Grogan*, 835 F.2d at 846-47. Injuries for mental anguish or lost opportunity do not constitute damages under RICO for "injury to business or property." *Dysart v. BankTrust*, 516 F. App'x 861, 864 (11th Cir. 2013); *see also Williams*, 465 F.3d at 1286-87. That is, Plaintiff cannot recover under RICO for intangible damages.

Plaintiff also asserts that he suffered economic loss as a result of the March 2018 Report and its aftermath. However, he did not own the property at issue at that time. The court has been

unable to locate any Eleventh Circuit precedent regarding whether a plaintiff may state a claim based on injury to property he did not own or have an interest. However, Ninth Circuit precedent is instructive on the matter.

To recover for injury to property under Section 1964(c), a plaintiff must own or have interest in the property at issue at the time of the alleged injury. *See Pette v. Int'l Union of Operating Eng'rs.*, 2013 WL 5573043, at *3 (C.D. Cal. Oct. 9, 2013); *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005); *Oscar v. Uni. Students Co-operative Ass'n*, 965 F.2d 783 (9th Cir. 1992), *abrogated on other grounds by Diaz, 420 F.3d at 898-99*; *Ainsworth v. Owenby*, 326 F. Supp. 3d 1111, 1121-24 (D. Or. 2018). In *Pette*, the court found that the plaintiffs' allegations were insufficient to state a claim, in part, because the alleged injury-affected property did not belong to any named plaintiff, stating:

> Section 1964(c) requires that a plaintiff suffer damage to "*his* business or property." 18 U.S.C. § 1964(c) (emphasis added); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640-41 (9th Cir.1988) (shareholders lacked RICO standing because their injuries derived from injury to the corporation); *Adams–Lundy v. Ass'n of Prof'l Flight Attendants*, 844 F.2d 245, 250 (5th Cir.1988) (union members lacked RICO standing where "financial improprieties occurred with union funds and directly injured solely the union."); *United Bhd. of Carpenters and Joiners of Am. v. Bldg. and Constr. Trades Dep't*, 911 F.Supp.2d 1118, 1124-26 (E.D.Wash.2012) (finding standing lacking where damaged property did not belong to any named plaintiff). Here, Plaintiffs are sixteen individuals, and bring purported class claims on behalf of other individuals. The injuries alleged, however, inhere to Local 501 and its ERISA funds, none of which is a named plaintiff in this case.

2013 WL 5573043, at *3. Another district court in the Ninth Circuit has expanded on this principle. In *Ainsworth*, the plaintiffs filed a civil RICO claim alleging, in part, that they suffered damages due to the reduction of their property value. 356 F. Supp. 3d at 1121. Without addressing the alleged violation of section 1962, the court found that the plaintiffs failed to sufficiently plead injury to their property. *Id.* at 1126. Relying on *Oscar* and *Diaz*, the district court explained:

> [I]t is not enough that Plaintiffs have alleged concrete financial losses because those losses are derivative of their emotional distress and not a property interest recognized under Oregon law – the financial loss in 1964(c) is necessary but not

13

> sufficient to state a cognizable RICO claim…The court [in *Oscar*] explained that…a dip in property value like that claimed by the plaintiff [in *Oscar*] was not a tangible loss because the plaintiff did not own the apartment and had no past, present, or future intent to monetize her leasehold interest by subletting the unit. [*Oscar*, 965 F.2d] at 786-87. The purpose of the example was to illustrate a tangible economic loss, not to hold that a plaintiff suffers a proprietary injury based *solely* on such a loss. *See id.* at 788…The interpretation sought by Plaintiffs is simply irreconcilable with other portions of the *Oscar* opinion, as well as subsequent Ninth Circuit precedent confirming that a civil RICO plaintiff must allege "both [a] property interest and [a] financial loss." *Diaz*, 420 F.3d at 900.

*Id.* at 1124 (internal marks in original).

Here, the court concludes that Plaintiff cannot sufficiently plead the requisite "injury to [his] business or property." 18 U.S.C. § 1964(c). Like the plaintiffs in *Pette* and *Ainsworth*, Plaintiff did not own or have an interest in the property at issue at the time of the alleged RICO violation. (Doc. # 51 ¶¶ 1, 6, 72-73). As such, Plaintiff cannot plead a tangible, concrete injury to his property based on the allegations against Defendants.

### b. RICO Statute of Limitations

Even if Plaintiff suffered a tangible economic loss, Plaintiff's RICO claim is barred by the applicable statute of limitations. In the Eleventh Circuit, a RICO action accrues when the plaintiff discovers, or reasonably should have discovered, his injury. *Pac. Harbor Cap., Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1251 (11th Cir. 2001); *Rotella v. Wood*, 528 U.S. 549, 554-55 (2000). Thus, a plaintiff must file a RICO claim within four years of the RICO claim accruing. *Pac. Harbor Cap., Inc.*, 252 F.3d at 1251. However, even a RICO claim filed within the statute of limitations period may be time-barred if a reasonable person would have discovered the injury more than four years before the suit was filed. *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 411 (5th Cir. 1998). In *Martinez Tapia*, the plaintiffs argued that the district court erred in concluding, in part, that the statute of limitations had run on their RICO claims. *Id.* at 409. The Fifth Circuit made the following observation before expanding on its legal analysis:

14

> Courts recognize that financial investment involves attendant risks. The investor who seeks to blame his investment loss on fraud or misrepresentation must himself exercise due diligence to learn the nature of his investment and the associated risks.

*Id.* at 411 (finding that the statute of limitations period began when the plaintiff purchased the real estate units because a "simple reading" of the agreement would have revealed the alleged injury).

Under these principles, Plaintiff's RICO claim is untimely. The genesis of Plaintiff's RICO claim is that Ensley was not included as a FOZ due to allegedly fraudulent information contained in the March 2018 Report. The FOZ nominations were *finalized* on April 19, 2018, about three months *before* Plaintiff purchased the Ensley properties at issue in this case. Therefore, had Plaintiff exercised reasonable diligence, he would have been aware that the Ensley properties were not within an FOZ at the time he purchased them.

This point is further supported by Plaintiff's own allegations. In the Second Amended Complaint, Plaintiff states:

> 11. Immediately after Plaintiff arrived in Downtown Ensley, Plaintiff stated looking for investors and financing to develop properties and increase the rent roll and the property value of purchased properties.
>
> 12. On 9/4/18 Plaintiff received an email written by Ed Fields, the Chief Strategist for [Birmingham] about potential North Birmingham developers and Ensley developers. Ed only requested [Carpenter] to look at the North Birmingham property and then Ed wrote "it sits in an opportunity zone."…
>
> 14. Plaintiff sent a response back on 9/13/18 to [John] Tally[, a commercial realtor in Birmingham]: "One of the reasons the City of Birmingham has made downtown Ensley a focus area is because somehow it was left out of the opportunity zone by the state by a few blocks" …
>
> 29. In preparation for Plaintiff['s] 8/13/21 formal complaint filed with the U.S. Department of the Treasury Inspector General, Plaintiff finally was aware of the fraud to exclude Ensley. …
>
> 92. Plaintiff was on conference calls with REV Birmingham Defendants and [Carpenter] discussing how Governor Ivey denied Downtown Ensley on 3/1/19 for the Ramsay McCormack development….

(Doc. # 51). The allegations show that Plaintiff was aware, or at a minimum should have been aware, more than four years before filing his RICO claim, (1) of the alleged fraudulent conduct, and (2) that the property he purchased was not in the FOZ. Therefore, Plaintiff's RICO claim is untimely.

## IV.   CONCLUSION

For the reasons discussed above, the motions to dismiss are due to be granted in part or are otherwise moot. The Motion to Quash (Doc. # 56) and Motion to Dismiss (Doc. # 58) are moot. The Motion to Dismiss filed by Corporate Realty and Simon (Doc. # 60) is due to be granted. The remaining Motions to Dismiss (Doc. # 57, 59, 61) are all due to be granted (a) to the extent they seek to dismiss Counts 2 through 5, Counts 7 through 10, Count 12, and Count 13 against the respective Defendants without prejudice, and (b) to the extent they seek to dismiss Count 1, Count 6, and Count 11 against the respective Defendants with prejudice.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

**DONE** and **ORDERED** this August 15, 2024.

_____  
**R. DAVID PROCTOR**  
CHIEF U.S. DISTRICT JUDGE